**George WATTS, et al., Plaintiffs–Appellants,**

v.

**Tommy G. THOMPSON, et al., Defendants–Appellees.**

**No. 96–3709.**

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1997.

Decided June 12, 1997.

Gaar W. Steiner, Douglass H. Bartley (argued), Steiner & Schoenfeld, Milwaukee, WI, for Plaintiffs–Appellants.

F. Thomas Creeron, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, Paul E. Bucher, Waukesha County District Attorney, Waukesha, WI, for Tommy G. Thompson.

Jon P. Axelrod (argued), William E. McCardell, Joseph A. Ranney, Dewitt, Ross & Stevens, Madison, WI, for Fritz Ruf.

Thomas L. Shriner, Jr., Richard M. Esenberg, Foley & Lardner, Milwaukee, WI, for Milwaukee Brewers Baseball Club, Limited.

Robert G. Ott, James T. McClutchy, Office of the Corporation Counsel, Milwaukee, WI, for F.T. Ament.

Patrick B. McDonnell, Office of the City Attorney, Milwaukee, WI, for John Norquist.

Before ROVNER, DIANE P. WOOD and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Although cranes and bulldozers can be seen working on a new ball park behind the right-center field fence at County Stadium, the present home of the Brewers in Milwaukee, Wisconsin, it's not a done deal as far as the plaintiffs in this case are concerned. They challenge the constitutionality of the law—the Stadium Act, §§ 229.64 *et seq.*, Wisconsin Statutes—which made it possible for work to begin on building the new diamond for the Milwaukee Brewers. The new venue, Miller Park, is scheduled to open for business in 2000. But not if the plaintiffs in this case have anything to say about it.

The Stadium Act, enacted after vigorous public debate during a special session of the Wisconsin Legislature in the fall of 1995, created a mechanism for forming local baseball park districts in populous areas of Wisconsin and giving those districts the authority to build and maintain professional baseball stadiums. A district must include a county with a population in excess of 500,000 as well as contiguous counties not included in a different district. The district may issue revenue bonds for a portion of the costs of the stadium and may impose a sales and use tax to repay the bonds. The state does not guarantee the bonds but may provide a nonbinding "moral obligation" pledge. The plaintiffs here, a determined group of taxpayers, the Libertarian Party of Wisconsin and the Libertarian Party of Metropolitan Milwaukee, are convinced that, in almost every conceivable way, the Stadium Act violates the Wisconsin and the United States Constitutions. Their attack on the Act has been waged both in the Wisconsin courts and in the federal district court in Milwaukee.

First, the Libertarians and certain taxpayers, who with the exception of George Watts are the same plaintiffs as in the federal case, filed a lawsuit in the circuit court for Milwaukee County. The defendants, led by Wisconsin Governor Tommy G. Thompson, petitioned the Wisconsin Supreme Court to hear the case under its original jurisdiction. The petition was granted and the parties were realigned. Even though the taxpayers (we'll refer to the plaintiffs collectively as the taxpayers) were not the "petitioners" who urged the supreme court to assert its original jurisdiction, they had, of course, worn the uniforms of "plaintiffs" in the circuit court. They were recast as "petitioners" by the high court. They, along with Mr. Watts, were "plaintiffs" in the district court and they are the "appellants" here. (It's hard to keep the players straight without a score card.)

The case in the Wisconsin Supreme Court proceeded—though, in the taxpayers' view, not without a bundle of errors. On December 13, 1995, as "petitioners," they tried unsuccessfully to voluntarily dismiss their case. Nevertheless, judgment was entered against them on April 9, 1996. But the taxpayers wanted to take the suit to extra innings. On the same day they tried to dismiss their state court action, they found a new playing field in the federal courthouse in Milwaukee, where they filed a second suit challenging the constitutionality of the Stadium Act. On October 15, 1996, the district court dismissed the federal action on the basis that it was barred by the doctrine of res judicata. This appeal followed.

The case before the federal district judge was not, by any stretch of the imagination, a whole new ball game. It was really the same case as the one litigated—or the one which could have been litigated—before the Wisconsin Supreme Court. It was litigated by the same parties or those in privity with them. No one argues that Mr. Watts, who was only a plaintiff in the federal suit, was not in privity with the petitioners in the case before the supreme court. Neither, presumably, would the taxpayers argue with the principle that federal courts give the same effect to state court judgments as do the courts of the rendering state. 28 U.S.C. § 1738. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ So why do they allege that it was error to dismiss the suit in the district court? Abandoning some of the arguments they raised in the district court, they now rely solely on the principle that res judicata does not apply if the first decision was rendered in violation of due process. *Lolling v. Patter-*

*son,* 966 F.2d 230 (7th Cir.1992). The principle is sound; their application of it is not.

Taxpayers argue that their due process rights were violated by what they call an "ex post facto briefing page limit"; by the supreme court's not waiving the 50–page limit; by a 3–day period being set within which to file a reply brief; and by the court's disposing of some claims by saying "any of the Libertarian Party's challenges not discussed with specificity can be deemed to lack sufficient merit to warrant individual attention." *Libertarian Party v. State,* 199 Wis.2d 790, 800, 546 N.W.2d 424 (1996). In addition, they claim that the Wisconsin Supreme Court lost personal jurisdiction over them when they attempted to voluntarily dismiss the original action. These arguments can be handled like a can of corn.

■ As a general matter, the Wisconsin Supreme Court makes the rules which it is under attack here for either violating or enforcing. The Wisconsin Rules of Appellate Procedure, found in Chapter 809 of the Wisconsin Statutes, were promulgated by a "Supreme Court Order of February 17, 1975." And it is incontrovertible that the Wisconsin Supreme Court is the final authority on questions of Wisconsin state law, both procedural and substantive. As the respondents correctly put it, "The Wisconsin Supreme Court cannot be 'wrong' about such questions." Furthermore, as to questions of state law, what the Wisconsin Supreme Court says is binding on federal courts. 28 U.S.C. § 1652. The taxpayers do not seem to directly attack these principles but they nevertheless argue that the court misapplied various rules and made up others, all in violation of their due process rights. And, as we said, the argument is that if due process was violated, the decision that followed cannot enjoy preclusive effect in federal court.

■ Specifically, the first alleged violation is the enforcement of the 50–page limit on briefs. What happened was that on December 11, 1995, the day their brief was due, the taxpayers submitted a 111-page brief. The Wisconsin Supreme Court promptly (and we think understandably and wisely) rejected it and ordered a brief within the 50–page limit to be filed by December 15. It was at this point, incidentally, that the taxpayers tried to voluntarily dismiss their case. That failing, they filed a 50–page brief, which is full of parenthetical statements, such as "full argument deleted due to page limits." The problem they had with the requirement for page limits is that they said it applied only to appeals, not to cases under the court's original jurisdiction. Relying on an unlikely authority for a minor point of Wisconsin law—Blackstone—they argue that the page limit was "ex post facto."

The short answer is that the Wisconsin Supreme Court thought otherwise and, Blackstone notwithstanding, the court makes the call. The decision is well within a reasonable interpretation of Chapter 809. Section 809.19(8) provides that briefs in the Wisconsin Court of Appeals shall be no more than 50 pages long. Section 809.63 provides that

> [w]hen the supreme court takes jurisdiction of an appeal or other proceeding, the rules governing procedures in the court of appeals are applicable to proceedings in the supreme court unless otherwise ordered by the supreme court in a particular case.

The taxpayers argue, however, that the statute governs appellate procedure and theirs was a case of original jurisdiction. The basis for the argument is that the original jurisdiction provision is § 809.70 and is in a subchapter titled "Original Jurisdiction Procedure in Supreme Court." Because the page limit is not repeated in this subchapter, taxpayers said it does not apply to their case.

There are at least four problems with this argument. First, it's silly. Second, the statute, on its face, says that it applies to "an appeal or other proceeding." Cases invoking the court's original jurisdiction can be seen as "other proceedings." Third, in Wisconsin, "titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes . . . are not part of the statutes." § 990.001(6), Wis. Stat. Fourth, even if the titles were to be used in the interpretation of the statutes, one could, nevertheless, easily conclude that the briefing rules apply to cases in the court's original jurisdiction.

The entire chapter is titled "Rules of Appellate Procedure." The subchapter on original jurisdiction is in the chapter on appellate procedure. One could conclude that original jurisdiction is one aspect of the work of an appellate court, specifically, the supreme court, and that all of its work is carried on in the manner described in the chapter. To say the least, it should come as no surprise when a litigant is called out by the Wisconsin Supreme Court's application of the page-limit rules in cases brought under the court's original jurisdiction. That being the case, there simply is no violation of the federal or the state constitution on this point.

■ Next, taxpayers argue that the supreme court should have waived the page limits; that it did not is said to be another due process violation. Not surprisingly, we disagree. Enforcing page limits and other restrictions on litigants is rather ordinary practice. This court has a page limit which is rather strictly, and cheerfully, enforced.

The establishment of an expedited briefing schedule is of the same ilk as the previous argument. To function with any sort of efficiency, a court must control the cases before it. In fact, the taxpayers agreed at the outset that the case should be handled expeditiously. That the time for filing a reply brief became shorter than originally established was due to the fact that the taxpayers were given additional days to shorten their 111-page opening brief. In turn, the respondents were given back the time they lost when the taxpayers' brief was filed on December 15, rather than the 11th. As a consequence, the taxpayers ended up with only 3 days to file a reply brief. But we cannot characterize this as a due process violation which would call the judgment into question.

■ Another issue which taxpayers raise is that the Wisconsin Supreme Court declined to discuss some of the issues raised before it. The petitioner taxpayers had, in fact, argued that the Stadium Act violated 15 separate constitutional provisions; the supreme court ruled against the taxpayers on all the contentions and considered some so lacking in merit as not to require discussion. Six of the issues, on the other hand, were thoroughly analyzed. Declining to discuss

certain issues is not an unusual, nor an unconstitutional, practice. In saying that some issues do not require discussion, a court is giving at least a perfunctory reason for its action: the claims lack merit. That is not to say that a court, thus concluding, could not be wrong, but being wrong is not in itself a violation of due process.

■ Finally, and remarkably, the taxpayers argue that the Wisconsin Supreme Court lacked jurisdiction over them—in a case they filed in a Wisconsin state court. The reason for this unlikely claim is that the taxpayers attempted to dismiss the case voluntarily but were not allowed to. The Wisconsin Supreme Court, again interpreting Wisconsin law, explained:

> This court has received from the petitioners (Libertarian Party of Wisconsin, et al.) a notice pursuant to § 805.04, Stats., purportedly dismissing this original action. This rule of civil procedure does not apply in this situation because the petitioners (Libertarian Party of Wisconsin, et al.), although nominally the petitioners in this matter pursuant to this court's order of November 20, 1995, accepting jurisdiction in this original action and realigning the parties for purposes of this proceeding, are not the equivalent of the "plaintiff" in a circuit court action; moreover, the pleadings served and filed in the circuit court, as well as the petition and response filed in this court, have been deemed to be the complaint and answer and thus the issue has been joined in this original action for declaratory judgment. Accordingly, § 805.04, Stats., does not apply in this proceeding. See, § (Rule) 809.84, Stats.

As we have said, the Wisconsin Supreme Court is the umpire of its own procedural rules. More fundamental, however, is the fact that without question, the Wisconsin courts had personal jurisdiction over the taxpayers, who claim to be Wisconsin residents. If they were not Wisconsin taxpayers, it is difficult to see why they would have standing to challenge the Stadium Act at all. The Wisconsin Supreme Court did not violate the taxpayers' due process rights, either state or federal. All of the elements necessary for

the application of the doctrine of res judicata have been met. The decision of the district court is, therefore, AFFIRMED.