Thomas C. BOWLING, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 96–SC–000946–MR.

Supreme Court of Kentucky.

Oct. 15, 1998.

Rehearing Denied Jan. 21, 1999.

Oleh R. Tustaniwsky, Assistant Public Advocate, Richard Hoffman, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler III, Attorney General, Connie Vance Malone, Assistant Attorney General, Kent T. Young, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

GRAVES, Justice.

Appellant, Thomas C. Bowling, was convicted in the Fayette Circuit Court of the intentional murders of Edward and Tina Early and of the fourth degree assault of Christopher Early. He was sentenced to death. His convictions and sentence were affirmed by this Court on September 30, 1993, and his petition for rehearing was denied on March 24, 1994. *Bowling v. Commonwealth,* Ky., 873 S.W.2d 175 (1994). His petition for a Writ of Certiorari was denied by the United States Supreme Court on Oc-

tober 3, 1994. *Bowling v. Kentucky,* 513 U.S. 862, 115 S.Ct. 176, 130 L.Ed.2d 112 (1994). On January 3, 1996, an executive order was signed, scheduling Appellant's execution for February 1, 1996.

On January 26, 1996, Appellant filed an RCr 11.42 motion in the Fayette Circuit Court. At that time, Appellant's counsel requested additional time to file either an amended or a supplemental RCr 11.42 motion. The court observed the request and entered an order granting Appellant "120 days from January 26, 1996 in which to supplement his Motion for Post–Conviction Relief." In timely compliance with that order, on May 28, 1996, Appellant filed an unverified supplemental RCr 11.42 motion. Eight days later, and subsequent to the 120–day deadline, Appellant filed a verified version of the same supplemental motion.[1]

In an order entered on October 1, 1996, the Fayette Circuit Court struck the unverified supplemental motion from the record because it was not signed and verified, and struck the verified motion because the time limit in which to file the motion had expired. Further, the trial court denied Appellant's request for relief under RCr 11.42. It is from this order that Appellant appeals to this Court.

## I. DISMISSAL OF APPELLANT'S SUPPLEMENTAL RCr 11.42 MOTION

Appellant argues that although RCr 11.42(2) requires that motions be "signed and verified by the movant", it does not require that any motion other than the initial pleading be signed. Furthermore, even if the rule

does require verification of a supplemental pleading, Appellant contends that the rule does not mandate dismissal of a supplemental pleading merely because it is not verified. Appellant urges that rigid adherence to procedural requirements in a death penalty case should not prevent an individual from fully litigating all constitutional defects in his conviction and sentence. Rather, a policy of "substantial compliance in appellate procedure is required." *Foxworthy v. Norstam Veneers, Inc.,* Ky., 816 S.W.2d 907 (1991); CR 73.02(2).

A trial court's ruling on a motion to amend will not be disturbed on appeal unless there has been a clear abuse of discretion. *Graves v. Winer,* Ky., 351 S.W.2d 193 (1961). In making its ruling, the trial court "may consider such factors as the failure to cure deficiencies by amendment or the futility of the amendment itself." *First National Bank of Cincinnati v. Hartmann,* Ky.App., 747 S.W.2d 614, 616 (1988).

Contrary to Appellant's assertion, we are of the opinion that although CR 73.02(2) does set forth a general theory of substantial compliance regarding the rules of appeals and motions for discretionary review, RCr 11.42 does not relate to either. Moreover, we cannot conclude that the trial court abused its discretion by declining to permit a belated verification of an unverified motion that was a supplement to a previous RCr 11.42 motion which had been filed only after protracted litigation.[2] The trial court "seriously reviewed and considered the voluminous pleadings in this case" before deciding

---

1. The verification in this case refers to Appellant's signature on the motion. The motion filed on May 28, 1996, contained the verification statement, but Appellant's signature was not on the signature line. Rather, there was a notation which read "Pending delivery by surface mail." Therefore, Appellant filed an additional motion on June 6, 1996, in order to provide his signature. The signature was the singular modification to the motion.

2. In its October 1, 1996, order, the Fayette Circuit Court described what it perceived as Appellant's "willful and systematic attempt to delay the proceedings in this case." After the death warrant was signed, Appellant chose not to file

an RCr 11.42 motion until the trial court found that it did not have jurisdiction to grant a stay of execution absent the filing of an RCr 11.42 motion and that finding was upheld by this Court. The trial court described this strategy as Appellant's "gamble to take" and stated that Appellant's "delay tactics" encompassed violations of the court's February 8, 1996, order. In striking the supplemental motions, the trial court stated that while it was "cognizant of its duty to freely allow amendment where justice so requires pursuant to CR 15.01, [it] finds that the Movant's conduct and the lack of merit in the claims raised in the Supplemental 11.42 warrant a different conclusion."

to strike Appellant's unauthorized pleadings. No error occurred.

## II. CLAIMS RAISED IN THE INITIAL RCr 11.42 MOTION

Appellant argues that the trial court erred in refusing to grant an evidentiary hearing or relief pursuant to RCr 11.42. Appellant contends that trial counsel's performance was deficient in ten areas, and that evidence outside the record is necessary to establish the validity of his claims, thus requiring an evidentiary hearing.

■■■ RCr 11.42 requires a hearing "if the answer raises a material issue of fact that cannot be determined on the face of the record." RCr 11.42(5); *Stanford v. Commonwealth*, Ky., 854 S.W.2d 742, 743 (1993), *cert. denied*, 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994). If the record refutes the claims of error, there is no need for an evidentiary hearing. *Id.* A hearing is also unnecessary where the allegations, even if true, would not be sufficient to invalidate the conviction. *Brewster v. Commonwealth*, Ky. App., 723 S.W.2d 863 (1986). "Even in a capital case, an RCr 11.42 movant is not automatically entitled to an evidentiary hearing." *Stanford, supra* at 743. (citing *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573, 576 (1990), *cert. denied*, 502 U.S. 844, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991)). Having laid that foundation, we will address each of Appellant's claims regarding the effectiveness of his trial counsel.

■■■ 1. Appellant contends that trial counsel spent an aggregate of one hour with him prior to trial and failed to keep him advised of developments in the case. However, this issue was raised and rejected on direct appeal to this Court, wherein we stated that "the trial strategy used by Bowling's counsel had a better chance of success than any of which the trial judge could think of in light of the strong evidence of guilt presented by the prosecution." *Bowling, supra* at 180. Therefore, Appellant is precluded from relitigating the issue in his RCr 11.42 motion.

*Brown v. Commonwealth*, Ky., 788 S.W.2d 500 (1990).

■■■ 2. While Appellant maintains his innocence, he alleges that defense counsel failed to properly investigate the possibility of asserting an Extreme Emotional Disturbance (EED) defense. Appellant claims that, had counsel informed him of the availability of an EED defense, he might have chosen to abandon his claim of innocence and have instead pursued the EED defense because he could have introduced two types of evidence to establish such a defense: 1) that his mental state in the days just prior to the murders was abnormal; and 2) that there was the requisite triggering event necessary to establish the defense.[3]

The Commonwealth aptly points out, and we agree, that the "wealth of evidence" regarding EED was before the court at the end of the penalty phase and was not even sufficient to warrant an instruction on EED as a mitigating factor. Moreover, we are not inclined to embrace Appellant's theory that he would have abandoned his claim of innocence.

■■■ 3. Appellant contends that the prosecution failed to disclose the name of a witness to the car accident that immediately preceded the shootings, and that trial counsel failed to take any additional steps to locate the witness. Appellant explains that the witness could have testified as to how the accident affected Appellant, thereby presenting the triggering event evidence necessary for an EED instruction.

Appellant presents no evidence that the Commonwealth knew of the witness's identity. Furthermore, defense counsel argued that the automobile accident presented sufficient evidence to support an EED instruction based upon the unchallenged conclusion that the collision occurred prior to the shootings. It was not the lack of evidence pertaining to the collision, but rather the lack of evidence showing the effect the collision had upon Appellant that precluded the EED instruction.

---

3. The triggering event Appellant describes is the minor collision in which Appellant and the victims were involved. Appellant claims that it is possible that he could have become so enraged after the collision with the Earlys as to have killed them.

■ 4. Appellant claims that he was denied effective counsel when lead counsel was indicted during trial. He alleges that counsel was distracted and even had a breakdown, and directed another member of the defense team to cross-examine witnesses until he could regain control of himself. As a result, Appellant concludes that impeachment and cross-examination were limited due to the role reversal. Also, Appellant believes that knowledge of the impending indictment may have played a role in the inadequate investigation of his case.

Appellant concedes that none of this was made part of the trial record. With no evidence that counsel's indictment had any negative implications on Appellant's trial, we cannot conclude that Appellant was denied effective counsel in this respect.

■ 5. Appellant further contends that defense counsel failed to adequately investigate several other people who had a motive to commit the murders. However, Appellant's argument is based upon vague rumors and unsupported claims. Regardless of counsel's actions in this particular area, we are of the opinion that the mere existence of other potential suspects could do nothing to diminish the impact of the Commonwealth's overwhelming proof against Appellant. Moreover, we agree with the Commonwealth that such claim is particulary offensive when Appellant alleges to know the identity of the actual killer yet continues to withhold the information.

■ 6. Appellant next claims that counsel failed to locate Norman Pullins, a witness to the shooting who gave a description of the shooter that was inconsistent with Appellant's appearance. The record indicates that counsel, in fact, made extraordinary efforts to locate Pullins, and even requested a continuance until he could be found. In response, the Commonwealth agreed to allow Pullins' taped statement to be introduced and played for the jury. Thus, Pullins' description of the gunman was provided to the jury without risking the possibility of an in-court identification or other potentially damaging testimony to Appellant.

■ 7. Appellant further claims that counsel failed to controvert the Commonwealth expert's psychological profile of Appellant. In all actuality, however, it was this profile that aided Appellant in his case more than his own psychologist's profile. To controvert it would have damaged his case. Nonetheless, an unfavorable report does not require counsel to search until an expert supporting the defense theory can be found.

8. Appellant also contends that defense counsel failed to investigate potential mitigation evidence, specifically that, at an early age, Appellant had a growth removed from his head, and that there was a history of mental disorders in Appellant's family. This argument, as well, is clearly refuted by the record. In the penalty phase, counsel introduced extensive evidence pertaining to Appellant's family history of mental illness, his childhood, his marital history, and his deteriorating mental condition in the period leading up to the murders. Counsel presented strong evidence upon which the jury could have reduced Appellant's sentence, had it seen fit to do so. The jury simply weighed the evidence and chose not to reduce the sentence.

9. Appellant next argues that defense counsel performed deficiently by failing to object to conclusions drawn by the Commonwealth in its closing statement that Appellant stalked and waited for the victims and therefore acted with premeditation. Again, this issue was addressed by this Court in Appellant's direct appeal in which we held that "the closing arguments by the prosecution were based on the evidence and the reasonable inferences from the evidence." *Bowling, supra* at 178–179. No further review is appropriate.

■ 10. Appellant finally claims that the Commonwealth made a clandestine deal with a witness, Clay Brackett, in exchange for his testimony. Appellant has no basis for such an allegation, and we have no reason to speculate that such an arrangement existed.

Having reviewed each allegation of ineffective assistance of trial counsel, we conclude that Appellant has failed to demonstrate any claims which are not refuted by an analysis and review of the trial record. Many of

Appellant's claims are nothing more than bald assertions without any factual basis. Such does not justify an evidentiary hearing pursuant to RCr 11.42.

Similarly, none of Appellant's claims of ineffective assistance of counsel entitle him to relief under RCr 11.42. The standard for determining ineffective assistance of counsel announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), was adopted by this Court in *Gall v. Commonwealth,* Ky., 702 S.W.2d 37 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). *Strickland* requires a movant to show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland, supra* at 687, 104 S.Ct. at 2064. In addition, *Strickland* mandates that judicial scrutiny be highly deferential. A court making this evaluation "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689, 104 S.Ct. at 2065.

A court in considering an ineffectiveness claim must "consider the totality of the evidence before the judge or jury" and "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." *Id.; Kimmelman v. Morrison,* 477 U.S. 365, 386, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986). Under *Strickland* it is not enough that counsel erred and Appellant's trial reached an unfavorable result. Instead, Appellant must demonstrate that, absent counsel's errors, there exists a "reasonable probability" the jury would have reached a different verdict. *Id. Strickland, supra,* at 694, 104 S.Ct. at 2068. We do not believe that in light of all of the circumstances, counsel's performance was "outside of the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066.

### III. CLAIMS OF ERROR RAISED IN THE SUPPLEMENTAL RCr 11.42 MOTION

In addition to the claims raised in the initial RCr 11.42 motion, Appellant presents a number of other issues in his supplemental RCr 11.42 motion. Notwithstanding that his supplemental motion was struck by the trial court, in the interest of judicial economy we will review the seven additional claims of ineffective assistance of counsel raised in the motion.

1. Appellant argues that counsel failed to investigate or introduce evidence that the shootings might have been triggered by jealousy because Appellant mistook the victim, Eddie Early, for Eddie Phiel, the man who was at that time dating Appellant's wife. Such evidence, Appellant concludes, could have led the jury to impose a lesser sentence because it would have refuted the Commonwealth's assertion that Appellant intentionally stalked and killed two strangers. He further contends that the evidence could have served as proof of a triggering event thereby entitling him to an EED instruction.

A claim of jealousy is not a basis for granting an instruction on extreme emotional disturbance. *Thomas v. Commonwealth,* Ky. App., 587 S.W.2d 264 (1979). Moreover, Appellant is arguing that counsel should have introduced evidence that the murders were intentional in contravention of his claim of innocence. The only possible motive for adopting such a strategy would be the misguided belief that the jury would have looked more favorably on Appellant if he killed two strangers, rather than the two people he actually intended to kill. We are not persuaded by such an argument.

2. Appellant claims counsel failed to request statements provided by Eddie Phiel supporting Appellant's theory that he killed the Earlys because he mistook Eddie Early for Eddie Phiel. Appellant contends that the statements were exculpatory evidence that he did not stalk and intentionally kill the Earlys. Appellant's contentions are clearly refuted by the record. The Commonwealth provided an open discovery file, and defense counsel made an oral motion for exculpatory evidence.

3. Appellant further claims that counsel failed to investigate other exculpatory evidence that could have led to the conclusion that someone other than Appellant committed the murders. Again, the record indicates

that counsel made a motion for all exculpatory evidence and was provided an open discovery file.

4. Appellant claims that counsel failed to object to the Commonwealth's line of questioning regarding the possibility that Appellant's mental problems were feigned and used to manipulate his family. This claim was raised and disposed of on direct appeal and cannot be relitigated herein.

■ 5. Appellant argues that the defense psychologist, Dr. Beal, did not follow the five-step process for a competent mental health evaluation in a criminal case. However, Appellant cites no authority for his contentions that an evaluation that does not adhere to the "five-step process" is legally deficient. Neither does Appellant cite any authority for the proposition that trial counsel who retains and relies upon a mental health expert who does not follow the process is automatically ineffective.

6. Appellant claims that counsel failed to request exculpatory evidence regarding a photo line-up. Again, such claim is refuted by the record.

■ 7. Finally, Appellant asserts that counsel was ineffective in failing to introduce or elicit proof that there were seven gun shots fired, yet the gun recovered from his mother's property was only capable of firing six shots. Further, counsel did not cross-examine witnesses regarding whether they saw the gunman reload the gun. However, Appellant fails to appreciate that evidence was introduced that one bullet could have caused two wounds. Thus, the seven-shot theory was of such minimal evidentiary value that counsel's decision not to pursue it was not prejudicial.

As with the initial RCr 11.42 motion, all of the claims asserted in the supplemental motion have either been decided on direct appeal or constitute harmless error, and are consequently insufficient to invalidate Appellant's conviction. Therefore, he was not entitled to a hearing or relief on any of the claims.

## IV. EFFECTIVE ASSISTANCE OF POST–CONVICTION COUNSEL

■ Appellant further argues that post-conviction counsel was ineffective. Appellant concedes that this issue is not preserved, however he urges that it is reviewable as palpable error under RCr 10.26. It is Appellant's position that because the unverified supplemental motion warranted summary dismissal, and because the trial court stated that Appellant failed to meet his RCr 11.42 burden, Appellant was denied the right to effective assistance of post-conviction counsel.

The purpose of an RCr 11.42 proceeding is to review a judgment and sentence for constitutional validity of the proceedings prior to judgment or in the sentence and judgment itself. The rule simply provides for a collateral attack on the sentence. RCr 11.42(1). Assuming that this issue could be considered under RCr 11.42, Appellant concedes that it was not presented to the trial court for consideration. In the absence of palpable error affecting Appellant's rights, this issue is not reviewable on appeal. *Todd v. Commonwealth*, Ky., 716 S.W.2d 242 (1986).

■ Notwithstanding the procedural deficiency, Appellant's argument is without merit. In *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991), the United States Supreme Court held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." (citations omitted); *See also Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).

## V. CUMULATIVE IMPACT

Appellant argues that the cumulative impact of the errors committed during his trial requires that his convictions and sentence be set aside. We disagree. As we have concluded that no error occurred, "[a] combination of non-errors does not suddenly require reversal." *Byrd v. Commonwealth*, Ky., 825 S.W.2d 272, 278 (1992); *see also, Funk v. Commonwealth*, Ky., 842 S.W.2d 476, 483 (1993); *McQueen v. Commonwealth*, Ky., 721 S.W.2d 694 (1986).

## VI. CR 76.16(5)(a) 50 PAGE LIMIT

Appellant contends that the 50 page limit for briefs imposed under CR 76.16(5)(a) denies him a full and fair opportunity to present his claims. This argument is completely without merit. Pursuant to CR 76.12(4)(b)(ii), counsel can request leave to file a brief in excess of the 50–page limit. Counsel chose not to do so, and thus this Court was not given the opportunity to consider any reasons Appellant may have had to justify a longer brief. Further, we point out that, contrary to Appellant's argument, a page limit is simply not a due process violation. *Watts v. Thompson,* 116 F.3d 220 (7th Cir.1997).

Accordingly, for the reasons set forth herein, we conclude that the trial court properly denied Appellant an evidentiary hearing and relief under RCr 11.42. All claims set forth both in the original and supplemental RCr 11.42 motions are either refuted by the record or insufficient to justify a hearing.

The convictions and sentence of the Fayette Circuit Court are affirmed.

All concur.