RENDERED: APRIL 9, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0647-MR

ALEXANDER L. RUFF                                               APPELLANT

v.            APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCHELL PERRY, JUDGE
ACTION NO. 08-CR-003686

COMMONWEALTH OF KENTUCKY                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, KRAMER, AND MCNEILL, JUDGES.

KRAMER, JUDGE: Alexander L. Ruff appeals the Jefferson Circuit Court's order denying his motion to vacate, set aside, or correct sentence pursuant to RCr[1] 11.42. After a careful review, we affirm.

In upholding Ruff's conviction and sentence, the Kentucky Supreme Court described the underlying facts thusly,

---

[1] Kentucky Rules of Criminal Procedure.

On November 24, 2008, Alexander Ruff entered the New York Fashions clothing store in Louisville, Kentucky, with the intent to rob the store and its customers. Ruff was accompanied that day by John Benton and Kendrick Robinson. With tee-shirts tied around their faces and armed with handguns, Ruff and Benton entered the store while Robinson waited in a nearby vehicle. Ruff fired a single shot into the ceiling and ordered the people inside to get on the ground and surrender their wallets and cash. Ruff fired the gun again, this time striking store owner Mohamed Abderlrahman in the abdomen. Ruff and Benton then collected the customers' wallets and fled in Robinson's car. Abderlrahman died as a result of internal bleeding caused by his injury.

Four days later, Louisville Metro Police Department ("LMPD") Officers Christopher Sheehan and Benjamin Lunte, while on narcotics patrol, stopped a vehicle driven by Ruff's girlfriend, Chesica White, for an unreadable temporary tag. Ruff happened to be seated in the passenger seat when the officers approached the vehicle. After White and Ruff exited the vehicle, Ruff suddenly fainted and fell to the street. The officers testified that, suspecting that Ruff had swallowed narcotics, they obtained consent from White to search the vehicle. White disputed that she gave consent. Officer Sheehan found a 45-caliber handgun and a garbage bag full of clothing under the passenger seat of the car. Ruff admitted ownership of the gun and clothing. He was then arrested on unrelated charges and transported to an LMPD substation for questioning.

That evening, Ruff was questioned and placed in jail on the unrelated charges. Five days later on December 3, Ruff was transported to the LMPD homicide office for further questioning. He once again returned for questioning on December 5. Over the course of his interviews with LMPD detectives, Ruff admitted to

being involved in the New York Fashions robbery, and implicated Benton and Robinson as co-conspirators.

Ruff was indicted by a Jefferson County Grand Jury on one count of murder and three counts of robbery. His motions to suppress evidence found and statements made during the vehicle stop and subsequent statements at the LMPD office were denied. At trial, Ruff took the stand in his own defense. He confessed to his involvement in the robbery and shooting, including taking customers' wallets and firing his weapon in Mohamad Abdelrahman's direction. The jury convicted Ruff of wanton murder and first-degree robbery. Finding an aggravating factor of first-degree robbery, the jury returned a sentence of life without the benefit of parole or probation for twenty-five years. The trial court sentenced in accord with the jury's recommendation[.]

*Ruff v. Commonwealth*, No. 2011-SC-000640-MR, 2013 WL 1789861, at \*1 (Ky. Apr. 25, 2013) (footnote omitted).

After his conviction was affirmed, Ruff filed a *pro se* motion to vacate his conviction and sentence pursuant to RCr 11.42 in the circuit court, which was summarily denied. Ruff appealed to this Court, and the matter was remanded for an evidentiary hearing.[2] The circuit court appointed counsel to Ruff who supplemented the *pro se* motion. The circuit court held an evidentiary hearing and once again denied Ruff's requested relief pursuant to RCr 11.42. This appeal followed.

---

[2] *See Ruff v. Commonwealth*, No. 2014-CA-001448-MR, 2017 WL 5045613 (Ky. App. Nov. 3, 2017).

Although Ruff made numerous arguments for ineffective assistance of counsel to the circuit court, his only argument to this Court is that trial counsel failed to adequately prepare for the penalty phase of the trial. We disagree.

We first note that no recording of the jury trial, including the penalty phase and sentencing, appears in the record before us. Ruff does not make direct citations to testimony given during the penalty phase of the trial; however, his arguments stem entirely from what he contends was the inadequacy of mitigation testimony given by his sister and his aunt. Ruff filed a designation of record pursuant to CR[3] 75.01 that designated, among other items, video recordings from his trial and the evidentiary hearing. Although the evidentiary hearing is contained in the record before us, the video recordings of the trial, including the penalty phase and sentencing, are not.[4]

> On appeal, the trial court's findings of fact will not be disturbed unless they are clearly erroneous. CR 52.01. When the evidence is not presented for review, this court is confined to a determination as to whether the pleadings support the judgment and on all issues of fact in dispute we are required to assume that the evidence supports the findings of the lower court.

---

[3] Kentucky Rule of Civil Procedure.

[4] The record before us indicates that Ruff was sentenced at the end of the trial, and he waived a presentence investigation (PSI) pursuant to RCr 11.02. The purpose of a PSI is "to furnish the court with an adequate background from which an evaluation of the defendant may be made[.]" *Misher v. Commonwealth*, 576 S.W.2d 238, 241 (Ky. App. 1978). The PSI would have provided the circuit court, in relevant part, with additional background on Ruff's family history, including abuse, to take into consideration prior to imposition of his sentence.

*McDaniel v. Garrett*, 661 S.W.2d 789, 791 (Ky. App. 1983) (citation omitted).

Thus, without the complete record, we must assume the substance of the testimony given during the penalty phase by Ruff's sister and aunt support the circuit court's order. *Id.* We also look to the evidentiary hearing to analyze Ruff's argument that his trial counsel did not adequately prepare for the penalty phase of the trial.

We review a trial court's denial of an RCr 11.42 motion as to whether the denial constituted an abuse of that court's discretion. *Bowling v. Commonwealth*, 981 S.W.2d 545, 548 (Ky. 1998). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

Because the trial court conducted an evidentiary hearing on the motion, its findings of fact will not be set aside unless they are clearly erroneous. CR 52.01; *Adams v. Commonwealth*, 424 S.W.2d 849, 851 (Ky. 1968). Findings of fact are not clearly erroneous if supported by substantial evidence. *Black Motor Co. v. Greene*, 385 S.W.2d 954, 956 (Ky. 1964).

To prevail on a claim made pursuant to RCr 11.42, the defendant must show that counsel's performance was deficient *and* that the deficiency prejudiced the defense. Demonstration of deficient representation requires showing that

counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment and that representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). To demonstrate prejudice, a defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* The proper standard for attorney performance is that of reasonably effective assistance, and the inquiry must be whether counsel's assistance was reasonable considering all of the circumstances. *Id.* A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065.

Ruff argues trial counsel's performance was deficient due to failure to reasonably investigate his background and present mitigating evidence during the penalty phase of the trial. We disagree.

Dr. Stephanie Hall, a psychiatrist, testified on Ruff's behalf at the evidentiary hearing. She interviewed Ruff post-conviction and diagnosed him with post-traumatic stress disorder (PTSD) and major depressive disorder, stemming primarily from childhood abuse and trauma. Ruff now argues that trial counsel

was deficient because, although Ruff underwent a psychiatric evaluation by the Kentucky Correctional Psychiatric Center (KCPC) prior to trial regarding competency to stand trial, counsel should have obtained an expert witness to conduct an independent psychiatric evaluation. He asserts that the KCPC report pointed to childhood trauma and had counsel conducted a thorough investigation, the necessity of an expert witness would have been apparent.

Ruff's lead counsel during the trial has since passed away, but co-counsel testified at the evidentiary hearing. She stated that, although she was added to the defense team just two months prior to the trial, she was primarily responsible for mitigation. Ruff was facing the death penalty for his crimes. Counsel testified that the agreed-upon strategy was to have Ruff testify on his own behalf to admit his involvement in the robbery and express remorse, which counsel believed to be genuine. Ruff testified during the guilt phase of the trial, but not the penalty phase, as counsel believed he could not add anything further. Counsel testified that Ruff's testimony was central to the defense strategy and that his remorse was the best mitigation. However, Ruff's sister and aunt testified during the penalty phase regarding the abuse and trauma Ruff suffered in his childhood. Counsel testified that she reached out to multiple family members, but only Ruff's sister and aunt were responsive.

We agree with the circuit court's analysis regarding the issue of

deficiency:

> In *Wong v. Belmontes*,[5] the U.S. Supreme Court was faced with a set of facts similar to the facts of this case. 558 U.S. 15 (2009). Defense counsel in *Wong* was criticized for not presenting expert testimony on the defendant's mental state. *Id.* at 23-24. Instead, trial counsel used family members and the defendant himself to present lay testimony of defendant[']s troubled childhood. *Id.* at 21. The Court found no error in trial counsel's strategy and explained that "the body of mitigating evidence . . . was neither complex nor technical." *Id.* at 24. Further, the evidence "required only that the jury make logical connections of the kind a lay person is well equipped to make." *Id.* Finally, the Court held that "the jury simply did not need expert testimony to understand the 'humanizing' evidence; it could use its common sense or its own sense of mercy." *Id.*

> Here, trial counsel testified at the post-conviction hearing that all decisions regarding Ruff's defense were made for reasoned, tactical purposes. For instance, trial counsel believed the best strategy was to have Ruff take the stand and show remorse. If the [KCPC report] accusing Ruff of malingering in bad faith were presented to the jury, they could have frustrated the overall defense strategy. Similarly, it was trial strategy to stipulate competency and the contents of the KCPC report that concluded Ruff was competent to stand trial. Again, trial counsel made an informed decision that if the KCPC report detailing Ruff's anti-social personality disorder and malingering were presented to the jury, the entire trial strategy of admitting guilt, taking responsibility, and showing remorse would be jeopardized.

---

[5] *Wong v. Belmontes*, 558 U.S. 15, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009).

Ruff titled the first roman [sic] numeral in the Argument section of his post-hearing memo as "trial counsel failed to present mitigation evidence." This is disingenuous. Trial counsel *did* present mitigation evidence in the form of testimony by several of Ruff's family members. Ruff's aunt and sister testified to his family and social history as well as his childhood trauma. Similar to *Wong*, "The jury simply did not need expert testimony to understand the 'humanizing evidence'" presented by Ruff's family members. *Id.*

As in *Wong*, it is important to consider *all* the evidence the jury would have had before it had Ruff's trial counsel followed the path he now asserts. Had Ruff presented expert testimony during mitigation regarding PTSD and depression, he would have opened the door for the Commonwealth to present the KCPC report, which was laden with findings that would have potentially undermined the defense strategy entirely. For instance, the KCPC report noted Ruff's proclivity to commit violence and have a complete lack of remorse. It detailed a history of lying since childhood and that Ruff never felt bad about doing so. The report also contained detailed findings of malingering, deceit, aggression, and disregard for the safety of others. This was in opposition to the remorseful, honest testimony that counsel hoped to convey to the jury by Ruff.

We agree with the circuit court that trial counsel's strategy regarding mitigation was sound. Ruff failed to overcome the presumption that counsel provided a reasonable trial strategy. *See United States v. Morrow*, 977 F.2d 222, 229-30 (6th Cir. 1992). Accordingly, we find no error.

-9-

Ruff has similarly failed to demonstrate prejudice. When a defendant claims prejudice related to mitigation evidence, he must establish "a reasonable probability that a competent attorney, aware of [the available mitigating evidence], would have introduced it at sentencing," and "that had the jury been confronted with this . . . mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." *Wiggins v. Smith,* 539 U.S. 510, 535-36, 123 S. Ct. 2527, 2542-43, 156 L. Ed. 2d 471 (2003). Ruff failed to meet this burden.

Ruff points out that he faced five sentence possibilities for the murder conviction, imprisonment for (1) a term of twenty to fifty years; (2) life; (3) life without the possibility of parole for twenty-five years; (4) life without the possibility of parole; or (5) death.[6] Ruff received the punishment of life with the possibility of parole at twenty-five years. He contends that, had trial counsel presented expert testimony, there was "a reasonable probability that at least one juror would have been persuaded to give a lesser sentence."[7] Ruff was facing the death penalty. He took the stand and admitted to his involvement in the robbery and shooting a gun in the direction of the victim. We agree with the circuit court

---

[6] The jury found that the murder was committed under aggravating circumstances because Ruff was engaged in the commission of robbery in the first degree when he murdered the victim. Thus, he was subject to the death penalty.

[7] *See* page 14 of Appellant's brief.

that, considering the evidence against Ruff, he received a relatively light sentence.

He has failed to demonstrate that actions of trial counsel prejudiced him at all, much less to the extent that the results of the trial would have been different.

Accordingly, we affirm the Jefferson Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Andrea Reed
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Perry T. Ryan
Assistant Attorney General
Frankfort, Kentucky