RENDERED:  JUNE 24, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1230-MR

TAWAIIN LEWIS                                                                APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JUDITH MCDONALD-BURKMAN, JUDGE
ACTION NO. 09-CR-002874


COMMONWEALTH OF KENTUCKY                                       APPELLEE


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  GOODWINE, TAYLOR, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Tawaiin Lewis appeals from an order of the Jefferson

Circuit Court denying his motion for relief pursuant to Kentucky Rules of Criminal

Procedure (RCr) 11.42.  In his motion, Lewis made multiple claims of ineffective

assistance of counsel but on appeal only argues that counsel erred by failing to

interview co-defendant Seaundre Horsley as part of his investigation, and failing to

call him to testify.  The trial court denied Lewis's motion without conducting an

an evidentiary hearing.  We vacate and remand for an evidentiary hearing on these issues.

Lewis was found guilty by a jury of two counts of intentional murder, two counts of assault in the first degree, and one count of wanton endangerment in the first degree.  Consistent with the jury's recommendation, the trial court sentenced Lewis to life without the possibility of parole for twenty-five years on the murder convictions, twenty years on each of the assault convictions, and five years on the wanton endangerment conviction, all sentences to run concurrently.

Lewis filed a direct appeal and his conviction was affirmed by the Kentucky Supreme Court in *Lewis v. Commonwealth*, 475 S.W.3d 26 (Ky. 2015). We adopt the facts from *Lewis*, as follows:

> On September 23, 2009, Lewis approached an apartment building on Saddlebrook Lane in Louisville, Kentucky. As they often did, Jonte Johnson (Jonte); his cousins, Dejuan Johnson (Dejuan) and Demarcus Johnson (Demarcus); and his friends Quinntin Knighton (Knighton) and Terry Matthews (Matthews) were sitting on the building's porch.  When Lewis approached, he had a handgun in his hand and had a short verbal confrontation with the men on the porch.  During that confrontation, Seaundre Horsley (Horsley), who was carrying an assault rifle, came around the corner of the building and began firing at the men on the porch.  Jonte and Knighton suffered multiple gunshot wounds and died as a result.  Demarcus, Dejuan, and Mathews [sic] were wounded, but not fatally.  The evidence at trial indicated that the fatal wounds to Jonte and Knighton were from bullets fired by the assault rifle.  As to the non-fatal

wounds, it was clear that some resulted from assault rifle bullets; however, the source of others was unclear.

Following an investigation, the police arrested both Horsley and Lewis, and charged them with two counts of murder, two counts of attempted murder, two counts of first degree assault, and one count of first degree wanton endangerment. Horsley claimed that he began firing the assault rifle because he thought someone on the porch had a gun and was about to start shooting.

*Id.* at 29-30.

The prosecutions of Lewis and Horsley later diverged. Despite the fact that it was bullets from Horsley's rifle, not Lewis's pistol, that caused the two deaths, the Commonwealth offered to reduce Horsley's charges down to two counts of second-degree manslaughter and two counts of second-degree assault in exchange for a sentence of ten years' imprisonment. The Commonwealth explained the basis for its offer stating that "it entered into the plea, in part, because it believed it had some evidentiary problems with identifying Horsley." *Id.* at 30 n.2. As part of his plea agreement, Horsley set forth the following statement of facts:

I was standing in the yard in front of the apartment building at 4908 Saddlebrook Lane on September 23, 2009, around 10:00 pm at night, here in Jefferson County, Kentucky. I was armed with a loaded Assault rifle. Tawaiin "Chum/Chub" Lewis was also standing in the yard. There were individuals on the stoop/porch at that address who were facing out into the yard where I was. When some or all of the five (5) individuals sitting or standing on the stoop/porch made sudden movements,

> I panicked and thought someone on the stoop/porch might be armed and have the intention of firing at me. I fired my weapon in the direction of the individuals on the porch. Although I did not know who was all on the porch at the time, I am now aware that the firing of the weapon by me caused the death of Quinntin Knighton and Jonte Johnson and injury to Demarcus Johnson and Dejuan Johnson. I am also now aware that Terry Matthews was the fifth individual on the stoop/porch that was put in danger by the firing of my weapon. I left the area after the shooting.

*Id.* at 30.

Besides placing Lewis at the scene, the statement does nothing to implicate Lewis in the shootings or in any conspiracy with Horsley. At Lewis's jury trial, his counsel sought to introduce Horsley's plea statement. The Commonwealth objected but agreed to stipulate that Horsley had fired the assault rifle and had pled guilty. The trial court accepted the stipulation but would not admit the plea documents into evidence. Curiously, neither the Commonwealth nor Lewis's counsel called Horsley to testify. The Kentucky Supreme Court would later specifically affirm the trial court's decision to exclude the written statement. *Id*. at 30-32. The Court also stated:

> We note that the trial court only ruled that Lewis could not introduce into evidence Horsley's plea agreement. The court did not rule that Horsley could not testify as to the contents of that agreement or as to his mental state at the time of the shooting. Furthermore, as noted by the Commonwealth, Horsley was available to testify and wanted to do so on behalf of Lewis. *However, counsel for Lewis never called Horsley to testify*.

-4-

*Id*. at 34 n.5 (emphasis added).

Following the affirmance of his convictions by the Kentucky Supreme Court, Lewis filed his RCr 11.42 motion alleging ineffective assistance of counsel on multiple grounds.[1]  The basis for Lewis's appeal only concerns his counsel neither interviewing Horsley as part of trial preparation, nor calling Horsley to testify at trial.  Lewis's position is supported by an affidavit executed by Horsley.  We quote this affidavit verbatim and without correction:

> That on september 23, 2009, about 10:00pm in Jefferson County, Kentucky.  That I had been in a altercation with Terry Mathews and some of his friends.  Terry is part of the Crips gang and I was a part of the Bloods.  I had came by the residence where the altercation happeded earlier, just in case I was jumped, I brough a weapon with me.  When I got to the house were he was, there were five people of the porch and Tawaiin Lewis had just walked up.  Some one on the porch made a sudden movement, and I thought that they may be reaching for a gun; and that they may have been firing on me.  So I fired my weapon in the direction of the individuals on the porch.  On the day of this incedent, I was not with, nor was my action in collaboration with, nor in concert with Tawaiin Lewis.  I acted alone with out the assistance of Mr Lewis or any other person in this misfortunate incedent which took the lives of two people; Quinntin Kinghton and Jonte Johnson, and also injuring Demarcus Johnson and Dejuan Johnson.

---

[1] Lewis's motion alleged that counsel was ineffective in (a) failing to investigate and prepare Horsley to testify; (b) failing to seek a continuance when the trial court determined that Horsley's plea statement was inadmissible; (c) failing to object to prosecutorial misconduct; (d) failing to retain an expert to testify as to impact of his intoxication on his culpability; and (e) cumulative error.

The trial court, without conducting an evidentiary hearing, denied the motion in a written opinion and order entered on January 23, 2019. A subsequent motion to alter, amend, or vacate that opinion was denied by an order entered on February 22, 2019.

"In reviewing an RCr 11.42 proceeding, the appellate court reviews the trial court's factual findings for clear error while reviewing the application of its legal standards and precedents de novo." *Ford v. Commonwealth*, 628 S.W.3d 147, 156 (Ky. 2021). "To prevail on an RCr 11.42 motion, the movant must convincingly establish he was deprived of some substantial right justifying the extraordinary relief afforded by the post-conviction proceeding." *Bratcher v. Commonwealth*, 406 S.W.3d 865, 869 (Ky.App. 2012).

Our standard of review of a motion alleging ineffective assistance of counsel is governed by rules set forth by the Supreme Court of the United States. The Court prescribed a two-pronged test setting forth the defendant's burden of proof in these cases:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), adopted in Kentucky by *Gall v. Commonwealth*, 702 S.W.2d 37, 39-40 (Ky. 1985). Both criteria must be met in order for the test to be satisfied.

The *Strickland* Court emphasized that reviewing courts should assess the effectiveness of counsel in the light of the totality of the evidence presented at trial and the fundamental fairness of the challenged proceeding. *Strickland*, 466 U.S. at 695-696, 104 S.Ct. at 2069. The Court further noted that, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689, 104 S.Ct. at 2065.

Where, as here, an RCr 11.42 hearing is denied, appellate review is limited to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967).

In reviewing the record in this matter, certain elements of the trial bear scrutiny. As noted, Horsley's plea statement, while certainly confirming Lewis's presence at the crime scene, did not implicate Lewis whatsoever in the crimes charged. Second, and most importantly, Lewis was found guilty of intentional murder pursuant to a complicity instruction under KRS 502.020. The

trial court defined both "intentional murder" and "complicity" for the jury as

follows:

### INSTRUCTION NO. 1: MURDER (INTENTIONAL)

You will find the defendant, TAWAIIN LEWIS, guilty of Intentional Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A.  That in Jefferson County on or about the 23rd day of September, 2009, the defendant, acting alone or in complicity with another, killed Jonte Johnson;[2]

AND

B.  That in so doing, he caused the death of Jonte Johnson intentionally.

(A) **Complicity**:  Means that a person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he solicits, commands, or engages in a conspiracy with such other person to commit the offense, or aids, counsels, or attempts to aid such person in planning or committing the offense.

Means that a person is guilty of an offense committed by another person when, while acting wantonly with regards to the result of another's conduct, he solicits, commands, or engages in a conspiracy with such other person to engage in that conduct, or aids, counsels, or attempts to aid such person in planning or committing such conduct.

*Lewis*, 475 S.W.3d at 33 (footnote omitted).

---

[2] The instruction for victim Quinntin Knighton was the same.

The Kentucky Supreme Court noted that "evidence at trial indicated" the bullets which killed Jonte Johnson and Quinntin Knighton were from Horsley's rifle and not from any weapon allegedly fired by Lewis. Therefore, the evidence at trial did not support finding that Lewis was "acting alone" in committing intentional murder, but that he could only have been acting "in complicity with another." If Horsley had been called to testify, and testified in conformity with his affidavit, his testimony would have wholly refuted the Commonwealth's allegation that Lewis had been involved in a conspiracy that resulted in murder. Lewis's alleged involvement in a conspiracy was the only means by which he could be convicted of intentional murder.

In denying Lewis's motion, the trial court noted that Horsley had pled guilty to second-degree manslaughter,[3] examined the definition of complicity, and determined that "Horsley's intent is irrelevant since both he and Lewis fired indiscriminately at the porch. This simultaneous firing is sufficient to charge Complicity." We disagree.

While Horsley's own *mens rea* may have been irrelevant, the real issue presented is much more elemental. At issue in regard to Lewis's intentional murder conviction, is whether or not there was any conspiracy at all between

---

[3] While Lewis was found guilty of "intentional" murder, Horsley's plea to manslaughter in the second degree only requires a *mens rea* of "wantonly" causing the death of another person. KRS 507.040.

Horsley and Lewis. We already know that no bullets from Lewis's firearm were found in either of the deceased victims and it was "unclear" whether or not any bullets from Lewis's firearm injured the other victims. *Lewis*, 475 S.W.3d at 29-30.

The fact that "several witnesses stated that both Lewis and Horsley fired their guns at the men on the porch[,]" *Lewis*, 475 S.W.3d at 34, does not necessarily mean that the parties, who did not arrive on the scene together, conspired together to ambush and assault the victims. Regardless of the extent to which Horsley and Lewis knew each other, there was no evidence of a conspiracy among them other that testimony that both discharged firearms during the engagement. The Kentucky Supreme Court has noted that our complicity statute contains two types of complicity; "complicity to the act" or "complicity to the result." *See Tharp v. Commonwealth*, 40 S.W.3d 356 (Ky. 2000). Horsley's affidavit undermines both. Without another witness testifying that the two defendants staged or otherwise planned a combined assault on the victims beforehand, Lewis's and Horsley's mutual denials would have posed a significant defense to the charged offenses of intentional murder by conspiracy.

The importance of the denial of a conspiracy found in Horsley's affidavit should be self-evident. As it now stands, both alleged parties to a conspiracy affirmatively deny any such plan or comity of action. The evidence

-10-

presented at trial, while implicating a conspiracy, does not on its own necessarily prove one. While we cannot know how the jury would have reacted to Horsley's denial, the ultimate question is why a man, who could offer a corroborating denial of the conspiracy and had already pled guilty to firing the deadly shots, was not called by Lewis's counsel. We cannot rule upon the reasonableness of defense counsel's actions or defer to defense counsel's strategic decisions when we do not even know whether or not conscious decisions were made.

The record in this matter does not show us whether or not Lewis's counsel interviewed Horsley or attempted to discover how he would testify at the time of the trial. Perhaps most importantly, we do not know what Lewis told his counsel about his involvement with Horsley which might have led counsel to avoid having Horsley anywhere near the witness stand. As noted in *Strickland*,

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.

We do know however, that Lewis's counsel wished to submit Horsley's plea statement. Conversely, the record does not indicate why, after being denied entry of the plea statement into evidence, Lewis's counsel did not call

Horsley to testify himself. Any judge or trial counsel can presume numerous reasons why a defense counsel might, as effective trial strategy, seek to submit information to a jury without having to do so through the testimony of an admitted gang member and killer who would also be subject to cross examination. While such explanations are inviting, they are not contained in the record before us and should not be explained away by conjecture.

Additionally, our analysis recognizes that the Commonwealth had already acquired Horsley's guilty plea and could have, as a condition of such, required him testify against Lewis if such testimony would have supported the allegation of a conspiracy. For reasons unknown and absent from the record, neither the prosecution nor the defense called the one person who could affirmatively confirm or deny the most significant debated element of Lewis's charged offense.

Without an evidentiary hearing, the trial court could not properly conclude from the record alone that the decisions made by Lewis's counsel were the result of trial strategy. Likewise, without the benefit of testimony provided at such a hearing, we are presently denied the ability to "evaluate the conduct from [defense] counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065. Thus, on appellate review, we cannot determine from the record whether counsel's decision to not call Lewis to testify "was trial strategy, or 'an abdication of

advocacy.'" *Hodge v. Commonwealth*, 68 S.W.3d 338, 345 (Ky. 2001)

(quoting *Austin v. Bell*, 126 F.3d 843, 849 (6th Cir. 1997)).

Accordingly, we vacate the order of the Jefferson Circuit Court and remand the case for an evidentiary hearing.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Andrea Reed
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

James Havey
Assistant Attorney General
Frankfort, Kentucky