# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: AUGUST 24, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2022-SC-0237-MR

TIMOTHY GANTHER                                                            APPELLANT


V.
ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE ERNESTO SCORSONE, JUDGE
NO. 17-CR-01297


COMMONWEALTH OF KENTUCKY                                          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## <u>AFFIRMING</u>

Timothy Ganther appeals as a matter of right[1] from a Fayette Circuit Court judgment sentencing him to 25-years' imprisonment for a murder conviction and various drug offenses. On appeal, Ganther alleges prosecutorial misconduct by the Commonwealth in relation to a misstatement of law made during closing arguments of the trial, and also improper questioning by the Commonwealth. Ganther argues that these issues amount to error that demands reversal of his conviction. We hold that neither the statement nor the questions amount to prosecutorial misconduct, and thus affirm Ganther's convictions.

---

[1] KY. CONST. § 110(2)(b).

## I. Facts and Procedural Background

On September 3, 2017, Ganther picked up the victim, Jerome Wadsworth, from a Greyhound bus station in Cincinnati. Wadsworth had travelled from Detroit, Michigan and had been in contact with Ganther regarding his visit to Lexington. Wadsworth brought with him 100 grams of heroin from Ganther's alleged drug supplier, Gaige Phillips. Ganther sold some of the drugs that evening with Wadsworth. Later that night, the men were involved in an altercation with one another that left Wadsworth dead, shot in the back of the head. Ganther testified that Wadsworth attempted to take money and drugs from Ganther's pockets, and a scuffle ensued. Ganther struck Wadsworth in the back of the head, knocking him to the ground. As Wadsworth began to get up, Ganther fired a single shot into the back of Wadsworth's head, killing him. Ganther confessed to shooting Wadsworth during the confrontation, but alleged he acted in self-defense with the intent only to injure him.

After a 3-day trial, the jury was given the option of convicting Ganther of murder or of the lesser included offense of first-degree manslaughter, as well as the various drug charges. After deliberations, the jury returned with a guilty verdict as to murder as well as to the drug counts and recommended Ganther be sentenced to a total of 25-years' imprisonment. The trial court adopted the jury's recommendation. Ganther now appeals to this Court as a matter of right.

## II. Standard of Review

Neither issue presented by Ganther on appeal was preserved at trial. Accordingly, we review for palpable error as set forth in RCr[2] 10.26. Ganther's claims may only succeed if the "error is clear and plain, affects the substantial rights of a party, and is more likely than other ordinary errors to affect the outcome of the case." *McCleery v. Commonwealth*, 410 S.W.3d 597, 605 (Ky. 2013).

## III. Analysis

### a. The prosecutor's misstatement did not result in flagrant misconduct.

Ganther first alleges that the Commonwealth's explanation of intent as to murder amounts to prosecutorial misconduct. Upon review for palpable error, we reverse "a conviction based on prosecutorial misconduct during closing argument only if that misconduct was flagrant." *Lewis v. Commonwealth*, 475 S.W.3d 26, 37 (Ky. 2015). After first identifying an error, we utilize a four-part test to determine whether a misstatement results in misconduct that is flagrant:

> (1) whether the remarks tended to mislead the jury or prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*Hannah v. Commonwealth,* 306 S.W.3d 509, 518 (Ky. 2010), *superseded by statute on other grounds.*

---

[2] Kentucky Rules of Criminal Procedure.

This Court has further stated that for palpable error review of alleged prosecutorial misconduct during closing arguments,

> [We] begin with an examination of both the amount of punishment fixed by the verdict and the weight of evidence supporting that punishment. Other relevant factors, however, include whether the Commonwealth's statements are supported by facts in the record and whether the allegedly improper statements appeared to rebut arguments raised by defense counsel. Finally, we must always consider these closing arguments "as a whole" and keep in mind the wide latitude we allow parties during closing arguments.

*Young v. Commonwealth*, 25 S.W.3d 66, 74-75 (Ky. 2000).

Ganther's argument that the prosecutor misrepresented the mental state required for murder is well taken. During closing arguments, the prosecutor stated that ". . .[the mental state] doesn't have to be the intent to kill him either, it's just the intent for that action of shooting Jerome in the back of the head." This is a misstatement of the specific intent necessary for a conviction of murder. As laid out in KRS[3] 507.020: "(1) A person is guilty of murder when: (a) *With intent to cause the death of another person*, he causes the death of such person[.]" Thus, the intent needed for a murder conviction is not simply the intent to shoot a person as the prosecutor declared, but rather the intent to cause that person's death. *See Paulley v. Commonwealth*, 323 S.W.3d 715, 726 n.43 (Ky. 2010) (prosecutor's statement that intentional murder only required proof of intent to shoot, not intent to kill, was erroneous). Indeed, the mere intent to pull the trigger lends itself to a number of possible offenses, from wanton endangerment to murder, although we acknowledge that Ganther

---

[3] Kentucky Revised Statutes.

4

could hardly have anticipated the outcome of his shooting Wadsworth in the back of the head would lead to anything less than Wadsworth's death. Nevertheless, the prosecutor's description lacked sufficient precision to comport with the law.

A prosecutor may discuss the law applicable to the facts at hand during a closing argument but may not misstate the law. *Padgett v. Commonwealth*, 312 S.W.3d 336, 351 (Ky. 2010). An unobjected to misstatement of law is treated in the same way as a misstatement of fact with regard to the assessment of alleged prosecutorial misconduct. *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006). Thus, we must analyze if this misstatement of law satisfies the four-part test set forth in *Hannah.*

Given the nature of the misstatement, it likely misled the jury regarding the definition of murder and/or the mental state required for the conviction. The comment made by the prosecutor invited the jury to conflate the intent to kill with the intent to merely shoot Wadsworth in the back of the head. The existence of an accurate statement of intent as to murder in the jury instructions does not by itself persuade us that the jury would have been able to parse the difference between the instructions and the comment sufficiently to realize the prosecutor had erred in his closing. We conclude, therefore, that the comment had a reasonable probability of at least confusing, and at worst misleading, the jury.

Proceeding to the remaining elements of the four-part test, the statement was isolated, constituting only a small portion—roughly ten seconds—of the

5

Commonwealth's hour-long closing. The third element, whether the comment was deliberate, cuts in favor of Ganther. We presume that the Commonwealth is aware of the elements of murder and in the absence of evidence to the contrary—an attempt to correct himself, for example—the comment appears to have been deliberately placed before the jury.

Finally, the evidence against Ganther was strong. No party contests that Ganther shot Wadsworth in the back of the head. The act of shooting the victim in the back of the head was itself compelling evidence that Ganther's intent was not merely to injure Wadsworth, but rather to cause his death. The jury's finding in accordance with this reasoning was imminently reasonable.

In sum, given the isolation of the statement and the weight of the evidence against Ganther, the prosecutor's misstatement does not rise to the level of flagrancy required under *Hannah*. *See White v. Commonwealth*, 544 S.W.3d 125, 146 (Ky. 2017) (as modified) (vacated on other grounds by *White v. Kentucky*, 139 S.Ct. 532 (2019)). Even though the jury was conceivably misinformed as to the nature of the intent required to find murder, whatever misconception existed in the minds of the jury did little to effect the outcome of Ganther's case. Ganther shot Wadsworth in the back of the head, an act with very few outcomes outside causing the death of the victim. Further, we note that, as to the murder charge, Ganther was given 20 years, the statutory minimum for murder and the maximum for first-degree manslaughter, one of the lesser-included offenses presented to the jury. As a result, whether Ganther received a harsher sentence upon conviction of the more serious

offense is unclear, another factor cutting against reversal pursuant to *Young.*
Accordingly, we do not believe there was a "'substantial possibility' that the result in the case would have been different without the error." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006).

### b. The Commonwealth's questioning regarding Phillips was proper.

Ganther next argues that alleged improper questioning by the Commonwealth and misleading testimony from a witness had a prejudicial impact on his conviction and sentencing. Specifically, Ganther argues that questioning by the Commonwealth as to whether Ganther acted under orders from Phillips—the individual in Detroit who provided drugs for Ganther and the victim—to kill Wadsworth diminished the likelihood of the jury finding Ganther guilty of the lesser offense of manslaughter. After thorough review of the record, we do not find error, much less palpable error.

Ganther directs us to two instances in support of his argument. First, a statement by Sergeant Tyson Carroll elicited during Ganther's cross-examination:

Defense: In the course of talking to him about the event, you tell him, something to the effect of, "after it happened, I bet you were scared as hell afterwards."

Sgt. Carroll: [nods head "yes"].

Defense: Do you believe that to be true?

Sgt. Carroll: I can't imagine a scenario where if anybody is in a traumatic situation, intentionally or otherwise, and they shoot somebody, that they wouldn't be scared. Even a seasoned hitman's going to have some fear running through them.

Defense: He's not charged with being that.

7

Sgt. Carroll: He's not.  He's not charged with being a hitman.

Second, Ganther directs us to questioning from the Commonwealth during its cross-examination of Ganther:

Commonwealth: From your testimony here today, it sounds like Gaige [Phillips] calls the shots in the drug dealing.  You're part of the drug dealing business, is that correct?

Ganther: Yes.

Commonwealth:  Did he tell you to get rid of Jerome [Wadsworth]?

Ganther: No, he didn't.

Commonwealth: That was your decision, wasn't it?

Ganther: What are you asking?

Commonwealth: It was your decision to kill Jerome?  Nobody told you to do that?  It was your choice, right?

Ganther: Yes.

We can discern no error in either instance.  Sgt. Carroll's testimony was perhaps intemperate and speculative, but it did not result in a fundamental unfairness that would merit reversal.  His intent was to underscore the amount of fear a person would feel after taking the life of another.  Further, Sgt. Carroll's non-responsive comment arose from a question posed by defense counsel and to which defense counsel apparently felt could be cured by subsequent clarification rather than an objection.  Given the isolated nature of the comment and the subsequent clarifying questioning by Ganther, no palpable error resulted from the statement.

8

The Commonwealth's questioning of Ganther similarly did not result in palpable error. Although we have cautioned litigators against asking questions that lack a factual predicate, *Pace v. Commonwealth*, 636 S.W.2d 887, 889 (Ky. 1982),[4] the questioning in this case was not mere speculation by the prosecutor, but rather flowed from the contextual facts of the case adduced at trial. Little dispute exists that Phillips was the orchestrator of the drug dealing operation, having provided the drugs to Wadsworth and sent him to Lexington to pass along to Ganther for sale. Given the existence of this arrangement, the prosecutor's question as to Phillips' role, or lack of role, in Wadsworth's death was not the sort of "out of the blue" question we disapproved of in *Pace. See, e.g., Owsley v. Commonwealth*, 743 S.W.2d 408, 409 (Ky. App. 1987). Ultimately, the question was useful for establishing Ganther's singular involvement in the shooting of Wadsworth and Ganther's responses reinforced his narrative of the events that the killing was the unfortunate result of Wadsworth's attempt to rob him. The questions, at most, were unnecessary, but they were not error.

In sum, the evidence does not reflect that either line of questioning or testimony had an impact on the conviction and sentencing of Ganther. Cross-examination is the "greatest legal engine ever invented for the discovery of truth,"[5] and here, the respective cross-examinations and the responses elicited

---

[4] *Overruled on other grounds by Commonwealth v. Harrell*, 3 S.W.3d 349 (Ky. 1999).

[5] 5 John Henry Wigmore, *Evidence in Trials at Common Law* § 1367 at 32 (James H. Chabourn ed. 1974).

thereto served that truth-finding function, even if the questions or responses went beyond that which was strictly necessary. Because neither Sgt. Carroll's response nor the Commonwealth's questions rose to the level of palpable error, Ganther is not entitled to relief.

## IV. Conclusion

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kayley Valentien Barnes
Jennifer Leigh Wade
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Stephanie Lynne McKeehan
Assistant Attorney General

10