RENDERED:  AUGUST 15, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1384-MR

TAWAIIN LEWIS                                                                APPELLANT

v.                          APPEAL FROM JEFFERSON CIRCUIT COURT
                            HONORABLE SARAH E. CLAY, JUDGE
                            ACTION NO. 09-CR-002874

COMMONWEALTH OF KENTUCKY                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, L. JONES, AND MCNEILL, JUDGES.

JONES, L., JUDGE:  This case is before us following a remand for an evidentiary

hearing on the motion of Tawaiin Lewis (Lewis) to vacate his conviction pursuant

to RCr[1] 11.42.  Following that evidentiary hearing, the trial court denied Lewis's

motion.  Lewis again appealed the trial court's decision.  We affirm.

---

[1] Kentucky Rules of Criminal Procedure.

# I.       FACTUAL AND PROCEDURAL BACKGROUND

Following a jury trial in 2014, Lewis was convicted of two counts of

Murder, two counts of Assault in the First Degree, and one count of Wanton

Endangerment.  Consistent with the jury's recommendation, Lewis was sentenced

to life imprisonment without the possibility of parole for twenty-five years on each

of the Murder convictions, twenty years on each count of Assault in the First

Degree, and five years on the count of Wanton Endangerment in the First Degree,

with all sentences to run concurrently.  The Kentucky Supreme Court affirmed the

convictions and sentences in *Lewis v. Commonwealth*, 475 S.W. 3d 26 (Ky. 2015)

(*Lewis I*).

The Kentucky Supreme Court summarized the relevant facts as

follows:

> On September 23, 2009, Lewis approached an
> apartment building on Saddlebrook Lane in Louisville,
> Kentucky.  As they often did, Jonte Johnson (Jonte); his
> cousins, Dejuan Johnson (Dejuan) and Demarcus
> Johnson (Demarcus); and his friends Quinntin Knighton
> (Knighton) and Terry Matthews (Matthews) were sitting
> on the building's porch.  When Lewis approached, he had
> a handgun in his hand and had a short verbal
> confrontation with the men on the porch.  During that
> confrontation, Seaundre Horsley (Horsley), who was
> carrying an assault rifle, came around the corner of the
> building and began firing at the men on the porch.  Jonte
> and Knighton suffered multiple gunshot wounds and died
> as a result.  Demarcus, Dejuan, and Mathews were
> wounded, but not fatally.  The evidence at trial indicated
> that the fatal wounds to Jonte and Knighton were from

bullets fired by the assault rifle. As to the non-fatal wounds, it was clear that some resulted from assault rifle bullets; however, the source of others was unclear.

Following an investigation, the police arrested both Horsley and Lewis, and charged them with two counts of murder, two counts of attempted murder, two counts of first degree assault, and one count of first degree wanton endangerment. Horsley claimed that he began firing the assault rifle because he thought someone on the porch had a gun and was about to start shooting. The Commonwealth offered to reduce the charges against Horsley to two counts of second degree manslaughter and two counts of second degree assault in exchange for a sentence of 10 years' imprisonment. Horsley accepted the Commonwealth's offer. Lewis proceeded to trial, and a jury found him guilty as set forth above.

*Id.* at 29-30 (footnotes omitted).

Of relevance to this appeal by Lewis, Seaundre Horsley (Horsley) set forth a statement of facts to accompany his plea deal. That statement, as noted by the Supreme Court, is as follows:

I was standing in the yard in front of the apartment building at 4908 Saddlebrook Lane on September 23, 2009, around 10:00 pm at night, here in Jefferson County, Kentucky. I was armed with a loaded Assault rifle. Tawaiin "Chum/Chub" Lewis was also standing in the yard. There were individuals on the stoop/porch at that address who were facing out into the yard where I was. When some or all of the five (5) individuals sitting or standing on the stoop/porch made sudden movements, I panicked and thought someone on the stoop/porch might be armed and have the intention of firing at me. I fired my weapon in the direction of the individuals on the porch. Although I did not know who was all on the porch at the time, I am now aware that the firing of the

-3-

weapon by me caused the death of Quinntin Knighton and Jonte Johnson and injury to Demarcus Johnson and Dejuan Johnson. I am also now aware that Terry Matthews was the fifth individual on the stoop/porch that was put in danger by the firing of my weapon. I left the area after the shooting.

*Id.* at 30.

On July 18, 2016, Lewis filed a *pro se* Motion to Vacate Conviction and Sentence Pursuant to RCr 11.42 (RCr 11.42 Motion). While Lewis made several claims of ineffective assistance by both his trial and appellate counsel, the only claims relevant to this appeal are Lewis's claims that trial counsel failed to interview Horsley and call him as a witness at trial. Lewis asserts Horsley's testimony would have refuted any claim that Lewis was acting in complicity with Horsley. In that same RCr 11.42 Motion, Lewis also requested the trial court appoint counsel and conduct an evidentiary hearing on his claims. The trial court appointed counsel,[2] and on January 23, 2019, the trial court entered an order denying all of Lewis's claims without holding an evidentiary hearing.[3]

A separate panel of this Court vacated the judgment of the trial court and remanded the case for an evidentiary hearing on the issue of whether Lewis's

---

[2] While counsel from the Department of Public Advocacy (DPA) initially entered an appearance on behalf of Lewis, private counsel entered an appearance and represented Lewis through the proceedings at the trial court level prior to appeal of the trial court's January 23, 2019 Order.

[3] The trial court denied a Motion to Alter Amend or Vacate its January 23, 2019 Order.

trial counsel erred by failing to interview Horsley and failing to call him to testify at trial. *Lewis v. Commonwealth*, No. 2019-CA-1230-MR, 2022 WL 2281775 (Ky. App. Jun. 24, 2022) (*Lewis II*). That panel noted an affidavit executed by Horsley (not to be confused with the statement from Horsley's plea which was cited by the Kentucky Supreme Court in *Lewis I*), in which Horsley avers:[4]

> That on [S]eptember 23, 2009, about 10:00 pm in Jefferson County, Kentucky. That I had been in a altercation with Terry Mathews and some of his friends. Terry is part of the Crips gang and I was a part of the Bloods. I had came by the residence where the altercation [happened] earlier, just in case I was jumped, I [brought] a weapon with me. When I got to the house [where] he was, there were five people of the porch and Tawaiin Lewis had just walked up. Some one on the porch made a sudden movement, and I thought that they may be reaching for a gun; and that they may have been firing on me. So I fired my weapon in the direction of the individuals on the porch. On the day of this incedent, [sic] I was not with, nor was my action in collaboration with, nor in concert with Tawaiin Lewis. I acted alone with out the assistance of Mr. Lewis or any other person in this misfortunate incedent [sic] which took the lives of two people; Quinntin Knighton and Jonte Johnson, and also injuring Demarcus Johnson and Dejuan Johnson.

*Id.* at *2.[5]

---

[4] The prior panel does not note the date this affidavit was executed. Based on the contents, we believe it is an October 6, 2014 Affidavit, which was attached to Lewis's *pro se* RCr 11.42 Motion. Horsley purportedly executed yet another affidavit regarding the events of the shooting and Lewis's involvement on November 17, 2017. That affidavit was attached to Lewis's supplement to his original RCr 11.42 Motion. However, at the evidentiary hearing subject to this appeal, Horsley denied executing the November 17, 2017 Affidavit.

[5] The prior panel quoted the October 6, 2014 Affidavit "verbatim and without correction." *Id.* at *2. Therefore, we do as well.

That prior panel noted that none of the rounds that killed Jonte Johnson and Quinntin Knighton came from any weapon that Lewis had, only from Horsley's weapon. *Id.* at *4. As such, that panel noted that Lewis could only be convicted of murder under a theory that he acted "'in complicity with another.'" *Id.* That prior panel reasoned that "[i]f Horsley had been called to testify, and testified in conformity with his affidavit, his testimony would have wholly refuted the Commonwealth's allegation that Lewis had been involved in a conspiracy that resulted in murder." *Id.* Noting that "the evidence at trial, while implicating a conspiracy, does not necessarily prove one," the prior panel held that "without another witness testifying that the two defendants staged or otherwise planned a combined assault on the victims beforehand, Lewis's and Horsley's mutual denials [of a conspiracy] would have posed a significant defense to the charged offenses of intentional murder by conspiracy." *Id.*

Because no evidentiary hearing was held, the prior panel noted that the record lacked any indication of an attempt by Lewis's counsel to interview Horsley or the reason they did not call him as a witness despite the possibility of such favorable testimony. *Id.* at *5. Without such a hearing, the prior panel found that "the trial court could not properly conclude from the record alone [whether the] decisions made by Lewis's counsel were the result of trial strategy." *Id.*

Following remand, the trial court held that evidentiary hearing on May 8, 2023. Four witnesses testified: (1) Horsley's attorney, (2) both attorneys for Lewis, and (3) Horsley. Testimony adduced at the hearing showed that both of Lewis's trial counsel were very experienced public defenders, each with decades of experience. All four witnesses agreed that Lewis's trial counsel interviewed Horsley after he entered his plea agreement, though Lewis's trial counsel had differing accounts from Horsley.[6]

Lewis's trial counsel testified that they went to interview Horsley soon after his plea was entered to determine if he was a viable witness for Lewis's defense. Lewis's trial counsel had slightly different recollections of what occurred at that interview. One testified that Horsley refused to answer any substantive questions and refused to provide any information outside of his plea proffer. Lewis's other counsel testified that he recalled Horsley refused to answer any questions at all. On the other hand, Horsley himself testified that Lewis's trial counsel visited him the day prior to Lewis's trial and told Horsley they had no defense prepared. Horsley testified that he told Lewis's trial counsel that he committed the murders himself and that Lewis had nothing to do with it.

---

[6] Horsley's trial attorney was not present for any interview, but confirmed at the RCr 11.42 hearing that Lewis's trial counsel asked his permission to interview Horsley and that he approved.

Following the interview, Lewis's trial counsel concluded, based upon their years of experience, that Horsley was an unreliable witness who could be far more harmful than helpful to the Lewis's defense. Thus, they decided Horsley's testimony was not worth the risk. In particular, one of Lewis's trial counsel testified he was concerned that Horsley might just as easily inculpate Lewis as exculpate him. Counsel further testified that even if Horsley's testimony at trial was limited to what was contained in his proffer, the jury might still disbelieve him, which would also jeopardize Lewis's defense. Lewis's other trial counsel testified that they were concerned that they had no statements besides the proffer to impeach Horsley if he took the witness stand and expanded on the facts in the proffer.

At the evidentiary hearing, Horsley also testified to the events surrounding the shooting. He claimed he had gone to the Saddlebrook apartments that evening and that he had "gotten into it" with several of the individuals who were shot. Horsley testified that he had two weapons with him that night, an AK-47 rifle and a handgun; and that he shot at the individuals on the porch because he was outnumbered and did not want them to attack him first. Regarding Lewis's involvement, Horsley specifically *denied* Lewis was present, or else Horsley

"would have shot him too."[7]  Horsley also claimed that he told his attorney from the start that Lewis was not involved.

On cross-examination, the Commonwealth impeached Horsley with his multiple different accounts of the shooting.  From his plea proffer, the Commonwealth noted that Horsley claimed Lewis was present at the time of the shooting.  When seeking parole in 2014, Horsley told the parole board that he had "gotten caught up in an argument and shot a couple of people," and that Lewis was involved in that argument with the victims.  The Commonwealth noted that in his October 6, 2014 Affidavit, Horsley claimed that Lewis had "just walked up" when Horsley arrived at the scene.  The Commonwealth also attempted to impeach Horsley with an affidavit purportedly executed by him on November 17, 2017, referenced in n.3, *supra*.  Horsley denied executing this affidavit.  Furthermore, Horsley's attorney countered Horsley's claim that Lewis was not present.  Horsley's attorney stated that Horsley never said Lewis was innocent.  In addition, Horsley's attorney testified that when drafting the plea proffer for Horsley, Horsley specifically said that Lewis was present at the scene.

Following briefing, on October 20, 2023, the trial court entered an Opinion and Order Denying Motion to Vacate (October 20, 2023 Order).  In that

---

[7] Lewis's counsel asked for clarification as to whether Horsley's recollection was that Lewis was not present at the scene of the shooting or whether Horsley did not recall whether Lewis was present.  In answer, Horsley testified that Lewis was not present.

Order, the trial court analyzed Lewis's claims under the two prongs of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which required Lewis to show that his trial counsel's performance was deficient and that he was prejudiced by such deficiency, *i.e.*, that his trial counsel's "errors were so serious as to deprive [Lewis] of a fair trial, a trial whose result[s are] reliable." The trial court found that the decision of Lewis's counsel not to call Horsley as a witness in Lewis's defense was reasonable trial strategy based upon their extensive experience. The trial court noted that Lewis's trial counsel had concerns about what Horsley would say if called, especially in light of Horsley's "bare-bones plea proffer," which provided limited opportunity for impeachment if Horsley deviated from the proffered statement. October 20, 2023 Order at 7-8. Regarding prejudice, the trial court found Horsley's credibility was non-existent, citing: (1) Horsley's inconsistent statements regarding the events of the shooting; (2) Horsley's unlikely claim that Lewis's trial counsel waited until the day before trial to interview him and told him specifically that they had not prepared a defense; (3) Horsley's own attorney partially contradicting Horsley's claims; and (4) Horsley's demeanor while testifying. As such, the trial court reasoned that Lewis was not prejudiced by trial counsel's failure to call Horsley as Horsley was not credible, coupled with "all of the other evidence that was introduced against Lewis at trial, which the Supreme

-10-

Court has already found to be sufficient to prove complicity[.]" *Id.* at 8-9. From that October 20, 2023 Order, Lewis filed this timely appeal.

On appeal, Lewis argues the trial court erred in finding that trial counsel's decision to not call Horsley as a witness was reasonable trial strategy. Lewis further argues that the panel in *Lewis II* already determined that he was prejudiced by the counsel's decision, and that the trial court erred in finding Horsley's testimony not credible. We disagree.

## II.       STANDARD OF REVIEW

We review a trial court's decision concerning ineffective assistance of counsel under RCr 11.42 for abuse of discretion. *Jackson v. Commonwealth*, 567 S.W.3d 615, 619 (Ky. App. 2019). As explained in *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999), "[t]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

Ineffective assistance of counsel claims are analyzed using the two Strickland factors. *Bowling v. Commonwealth*, 80 S.W.3d 405, 411-12 (Ky. 2002). Under the first prong, the defendant must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* (citations omitted). Under the second prong, the defendant must show "the

-11-

deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 412. Prejudice requires that the "defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

There is a strong presumption that trial counsel is effective. *Id*. Likewise, a defendant is not guaranteed perfect performance by counsel. *See McQueen v. Commonwealth*, 949 S.W.2d 70, 71 (Ky. 1997) ("A defendant is not guaranteed errorless counsel, or counsel adjudged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance."). Indeed, "[t]he critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Haight v. Commonwealth*, 41 S.W.3d 436, 441 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). With these principles in mind, we turn to Lewis's arguments on appeal.

## III.       ANALYSIS

Lewis argues on appeal that his trial attorneys' decision was not reasonable trial strategy, and thereby they rendered deficient performance. Lewis argues that Horsley would have testified that his decision to fire his weapon the

night of the offense was "borne out of panic, rather than premeditation and intent, further clarifying that [Lewis] did not assist him in committing [the] crime." Appellant's Brief at 12. Thus, Lewis claims Horsley would be "the *only* witness to testify that there was no plan, agreement, aiding, abetting or any conspiracy between him and [Lewis], and that he acted alone in shooting at the porch." *Id.* While Lewis acknowledges his trial counsel's concerns about Horsley's unpredictability or that Horsley might turn hostile, Lewis argues that Horsley's proffer accompanying his plea agreement "provided ample grounds to impeach and correct any inculpatory evidence [Horsley] may have offered." *Id.* at 14.

We note that "'[d]ecisions relating to witness selection are normally left to counsel's judgment and this judgment will not be second-guessed by hindsight.'" *Foley v. Commonwealth,* 17 S.W. 3d 878, 885 (Ky. 2000), *overruled on other grounds by Stopher v. Conliffe*, 170 S.W.3d 307 (Ky. 2005) (citations omitted). We also note that the prior panel in *Lewis II* does not disagree, instead, that panel's reason for remand was the lack of an evidentiary hearing: "[w]ithout an evidentiary hearing, the trial court could not properly conclude *from the record alone* that the decisions made by Lewis's counsel were the result of trial strategy." 2002 WL 2281775, at *5 (emphasis added). What interested the panel in *Lewis II* was "why a man, who could offer a corroborating denial of the conspiracy and had

already pled guilty to firing the deadly shots, was not called by Lewis's counsel." *Id.* at *4.

There could be no deference when the bare record "does not show us whether or not Lewis's counsel interviewed Horsley or attempted to discover how he would testify at trial." *Id.* at *5. *Lewis II* acknowledged that there could be "numerous reasons why a defense counsel might, as effective trial strategy, seek to submit information to a jury without having to do so through the testimony of an admitted gang member and killer who would also be subject to cross examination." *Id.* However, that panel found that without an evidentiary hearing, "on appellate review, we cannot determine from the record whether counsel's decision to not call [Horsley[8]] to testify was trial strategy or an abdication of advocacy." *Id.* (internal quotation marks omitted). Now the reasons behind Lewis's counsel decision not to call Horsley are in the record, and those reasons are to be accorded the deference they are due.

Lewis appears to argue that it was unreasonable for his counsel to decide the possible risks of Horsley's testimony outweighed the benefits, and that any fears of Horsley going rogue could be assuaged by impeachment with his proffer. Indeed, Lewis highlights a comment at the hearing from one of his

---

[8] The quote from *Lewis II* states "decision not to call Lewis to testify," but it is clear that the panel in *Lewis II* meant to refer to Horsley.

counsel that he had called witnesses in the past who had refused to speak with him, but that he had statements from those witnesses which could "make them say what I needed." Appellant Brief at 12.

There is no dispute that Lewis's counsel interviewed Horsley and while each of Lewis's counsel differed slightly as to Horsley's forthcomingness (one counsel saying that Horsley kept referring them back to his proffer and the other stating that Horsley refused to talk with them), it is clear they agree that Horsley would not expand upon the statements in his brief proffer. Thus, Lewis's counsel could not be sure what Horsley might say if questioning exceeded the narrow scope of the proffer; nor did the proffer provide a sufficient basis to impeach Horsley if he testified to facts outside the proffer that were harmful to Lewis. Moreover, Lewis's counsel had concerns as to how Horsley would fare on cross-examination and how credible the jury would find him. If the jury thought Horsley was lying, counsel believed that would reflect poorly on Lewis.

This was a decision made by very experienced trial counsel due to Horsley's lack of forthcomingness and counsel's concerns about his credibility. While Lewis points out that his counsel has previously called witnesses at trial whom he had not met with beforehand, he admits that counsel also indicated he had statements from those witnesses which allowed him to know what they were going to say, and which could be used to impeach them if they strayed from the

path.  Contrary to Lewis's claim otherwise, this supports the trial court's finding that counsel made a reasoned decision in choosing not to call Horsley.  Lewis invites us to second guess that his attorneys' decision, however, "[t]he tendency and temptation to second guess is strong and should be avoided."  *Harper v. Commonwealth*, 978 S.W.2d 311, 315 (Ky. 1998).

We note as well that in lieu of calling Horsley to the stand, Lewis's counsel also tried to persuade the trial court to consider Horsley's proffer as an adoptive admissions and thus not subject to the hearsay rule.  *Lewis I*, 475 S.W.3d at 31.  As the Kentucky Supreme Court noted, the issue was one of first impression at the time of *Lewis I.  Id.* at 31.  While the trial court and the Kentucky Supreme Court found that Horsley's proffer was not admissible as an adoptive admission, *id.* at 31-32, it still remains that a strategic decision is not rendered ineffective assistance of counsel simply because it does not succeed.  *See Strickland*, 466 U.S. at 690.  The fact that this strategy did not work did not remove any of counsel's concerns regarding Horsley.  Thus, the trial court correctly concluded that Lewis's trial attorneys did not provide deficient performance.

We also agree with the trial court that Lewis suffered no prejudice. First, however, we must address Lewis's claim that the prior panel in *Lewis II* "left no real question as to whether [Lewis] was prejudiced by trial counsel's failure to

call Horsley as a witness." Appellant's Brief at 15. This is a misreading of *Lewis II.*

The panel in *Lewis II* was reviewing the trial court's January 23, 2019 Order that denied Lewis's RCr 11.42 Motion *without a hearing*. 2022 WL 2281775, at *2. A hearing is not required if the record refutes the claims in an RCr 11.42 Motion or those allegations, even if true, would not warrant relief. *Bowling v. Commonwealth*, 981 S.W.2d 545, 549 (Ky. 1998). While the panel in *Lewis II* discussed the possible effects Horsley's proffer could have on Lewis's case, that panel also noted that "[w]here, as here, an RCr 11.42 hearing is denied, appellate review is *limited* to 'whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction.'" 2022 WL 2281775, at *3 (emphasis added) (citation omitted). The panel in *Lewis II* simply found that the record on its face did *not* conclusively refute Lewis's claims and remanded for an evidentiary hearing to test Lewis's claims.

Our conclusion is supported by the fact that "*both* parts of the *Strickland* test . . . involve mixed questions of law and fact[.]" *Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky. 2008). Thus, logically, if remand and a hearing with factual findings and conclusions of law were required for one half of the *Strickland* test, such hearing is required for the other half. Furthermore,

appellate courts are not fact finders. *Calhoun v. CSX Transp., Inc.*, 331 S.W.3d 236, 245 (Ky. 2011). Also, "[a]s an appellate court, we review judgments; we do not make them." *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014) (citations omitted). The panel in *Lewis II* did not specifically find that Lewis had established prejudice, as to have done so would have been an improper exercise in fact finding or judgment making by an appellate court. Thus, we find that the question of prejudice was not previously decided in *Lewis II*; rather it was a question remanded to be one answered by the trial court following findings of fact and conclusions of law.

As to the merits, Lewis argues that the trial court erred in finding Horsley not credible and "giving virtually no weight" to his testimony.[9] Appellant Brief at 16. While acknowledging that there were inconsistencies between Horsley's many different accounts of the night of the murders, Lewis argues that Horsley never wavered on "the portion of his testimony that had any bearing on the elements of the offense[,]" namely "(1) that [Horsley] was the shooter, (2) that he

---

[9] The trial court stated in its order "[I]t is axiomatic that when a movant asserts in an [RCr] 11.42 motion that the testimony of a witness would have changed the outcome of a case, that testimony must be credible. The Court must therefore assess the credibility of a witness when their testimony is the basis of a motion for a new trial. *Commonwealth v. Crumes*, 630 S.W.3d 630 (Ky. 2021)." We note that *Crumes* dealt with a trial court's assessment of *recanted* testimony. *Id.* at 647-48. The present case is one where a witness never actually testified. However, Lewis does not challenge the trial court's reliance on *Crumes*, but instead challenges whether the trial court erred in finding Horsley not credible. Thus, we will address Lewis's arguments and not perform a deeper dive on the standard for cases similar to the present case.

-18-

fired out of panic, and (3) that he did not plan his crimes with [Lewis]." *Id.* at 17.

Thus, Lewis argues it was error for the trial court to disbelieve Horlsey's account

of the shooting. We disagree.

"As a reviewing court, we must defer to findings of fact and

determinations of witness credibility made by the trial judge. Thus, unless the trial

court's findings of fact are clearly erroneous, those findings must stand."

*Commonwealth v. Bussell*, 226 S.W.3d 96, 99 (Ky. 2007) (footnotes and citations

omitted). The trial court's factual findings are only clearly erroneous if they are

not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.

2003). "Substantial evidence is evidence that a reasonable mind would accept as

adequate to support a conclusion and evidence that, when taken alone or in the

light of all of the evidence, . . . has sufficient probative value to induce conviction

in the minds of reasonable men." *Id.* (internal quotation marks and citations

omitted). Moreover, "the trial court, as the finder of fact, has the responsibility to

judge the credibility of all testimony, and may choose to believe or disbelieve any

part of the evidence presented to it." *K.R.L. v. P.A.C.*, 210 S.W.3d 183,187 (citing

*Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977)).

We find that the trial court's conclusion that Horsley lacked

credibility is supported by substantial evidence. Not only did the trial court note

the inconsistencies in Horsley's account of the night of the shooting,[10] the trial court noted Horsley's combative demeanor when confronted with inconsistencies. October 23, 2023 Order at 9. The trial court also found that Horsley's claim that Lewis's trial counsel "came to visit him the day before trial and proclaimed to him that they had no defense and needed his help defies imagination." *Id.* It was in the trial court's province to believe Horsley in whole or in part, and substantial evidence exists to support the trial court's conclusions that Horsley lacked credibility. Nothing required the trial court to believe any part of Horsley's testimony. Thus, we agree that Lewis suffered no prejudice.[11]

## IV. CONCLUSION

This case was remanded previously because the prior panel in *Lewis II* found that an evidentiary hearing was required to discover why Lewis's counsel did not call Seaundre Horsley to testify when it appeared Horsley's testimony was crucial to Lewis's defense. That evidentiary hearing provided multiple reasons for

---

[10] Lewis takes issue with the trial court's use of Horsley's statement to the Kentucky Parole Board in its findings as to Horsley's credibility in light of *Commonwealth v. Clark*, 528 S.W.3d 342, 348 (Ky. 2017). We need not and do not analyze whether the trial court was correct in using such testimony in its findings; even discounting Horsley's statements to the Parole Board for the sake of argument, the trial court's conclusions are supported by substantial evidence.

[11] We note in passing that when analyzing a claim under RCr 11.42, we analyze the circumstances that exist at the time of trial counsel's decisions. *Strickland*, 466 U.S. at 680. None of Horsley's subsequent accounts of the shooting would have existed when Lewis was tried. However, logically if a new trial had been ordered, Horsley would have been subject to cross-examination with those statements and it was proper for the trial court to consider such in assessing Horsley's credibility.

counsel's decision which were reasonable based upon counsel's extensive experience. Nor did Lewis suffer prejudice from counsel's decision because Horsley's testimony lacked credibility. Thus, the trial court did not abuse its discretion when denying Lewis's RCr 11.42 motion.

We view any remaining contentions of error as moot, unpersuasive, unpreserved, or without merit.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron P. Riggs
Assistant Public Advocate
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky